Order Form (01/2005)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Frederick J. Kapala | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 10 C 50303 | **DATE** | 11/28/2011 |
| **CASE TITLE** | Champion Steel Corporation vs. Midwest Strapping Products, Inc. | | |

**DOCKET ENTRY TEXT:**

Plaintiff's motion to strike affirmative defenses and counterclaim or to dismiss counterclaim [33] is denied.

■[ For further details see text below.]

Docketing to mail notices.

## STATEMENT

Plaintiff, Champion Steel Corporation ("Champion"), sued defendant, Midwest Strapping Products, Inc. ("Midwest"), for breach of contract in the Circuit Court for the 22nd Judicial Circuit, McHenry County, Illinois. Midwest removed the case to this court invoking diversity of citizenship subject matter jurisdiction. Thereafter, Midwest answered Champion's first amended complaint and raised three affirmative defenses and a counterclaim. Presently before the court is Champion's combined motion to strike defensive matters, affirmative defenses, and counterclaim or, alternatively, to dismiss the counterclaim. For the reasons set forth below, the motion is denied.

## I. BACKGROUND

In its first amended complaint, Champion alleges as follows. Champion is an Illinois corporation engaged in the business of supplying a wide range of flat roll sheet and coil products to the building and packaging trades with its principal place of business in Fox River Grove, Illinois. Midwest is an Ohio corporation engaged in the business of manufacturing strapping products with its principal place of business in Hillard, Ohio. Beginning on December 4, 2004, and at various times thereafter until January 14, 2010, Champion sold and delivered slip coils to Midwest. Midwest agreed to pay Champion for the products pursuant to the terms of the invoices and breached those terms by failing to pay Champion $875,639.

At the end of its answer to the first amended complaint, Midwest states three defenses: lack of personal jurisdiction, payment, and statute of limitations. Midwest also alleges a counterclaim for a setoff or recoupment alleging as follows. Champion and Champion Strapping Products, Inc. (Champion Strapping) are owned and controlled by Andrew Sandberg. Champion Strapping began to operate Midwest in June 2009 in anticipation of acquiring Midwest. When acquisition negotiations broke down, Sandberg caused Champion Strapping to falsely announce in January 2010 that Champion Strapping had acquired Midwest and directed that all payments for strapping products be paid directly to Champion Strapping. Since January 2010, Champion Strapping has been operating the strapping business it converted from Midwest for the benefit of Champion and Sandberg. Among other amounts, Midwest claims as a setoff against the amount Champion claims, amounts received directly or indirectly by Champion from sales of products manufactured by Midwest and sold by Champion or

| STATEMENT |
|---|

Champion Strapping.

## II. ANALYSIS

Rule 12(f) provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). A Rule 12(f) motion is the primary procedure for objecting to an insufficient defense. MPC Containment Sys., Ltd. v. Moreland, No. 05 C 6973, 2008 WL 1775501, at *2 (N.D. Ill. Apr. 17, 2008). Motions to strike are generally disfavored because of the likelihood that they may only serve to delay proceedings, but when striking portions of a pleading "remove[s] unnecessary clutter from the case," the motion may "serve to expedite, not delay." Heller Fin. Inc. v. Midwhey Powder Co., Inc., 883 F.2d 1286, 1294 (7th Cir. 1989). This holds true with respect to motions to strike affirmative defenses. United States v. 416.81 Acres of Land, 514 F.2d 627, 631 (7th Cir. 1975). A motion to strike an affirmative defense should therefore not be granted unless the defense is "patently defective" on the face of the pleadings. Bobbitt v. Victorian House, Inc., 532 F. Supp. 734, 736 (N.D. Ill. 1982) (citing 5 Charles Alan Wright & Aurthur Miller, Federal Practice and Procedure § 278). "Affirmative defenses will be stricken only when they are insufficient on the face of the pleadings." Heller Fin., 883 F.2d at 1294. Defenses generally "will not be struck if they are sufficient as a matter of law or if they present questions of law or fact." Id.

Champion moves to strike Midwest's first affirmative defense, lack of personal jurisdiction, contending that Midwest has pleaded itself out of court on the issue. Specifically, Champion argues that the requisite minimum contacts with Illinois are established through Midwest's own pleadings which establish that (1) Midwest entered into a business relationship with Champion, an Illinois Corporation, and sent payments to Champion in Illinois; and (2) Midwest removed this case to federal court thereby admitting that diversity of citizenship jurisdiction exists.

Champion concedes in its reply brief that pleading diversity of citizenship subject matter jurisdiction does nothing to show Midwest's minimum contacts with Illinois. The other circumstances –that Midwest had a business relationship with an Illinois corporation– could, but does not necessarily, establish Midwest's minimum contacts with Illinois. The exercise of personal jurisdiction may be proper where a commercial buyer engages in an ongoing business relationship with an Illinois corporation, see Bodine Elec. Co. v. Viking Access Sys., LLC, No. 09 C 3055, 2009 WL 5173490 at *3 (N.D. Ill. Dec.17, 2009), but it is not necessarily proper, see YCB Intern. Inc. v. UCF Trading Co., No. 09 C 7221, 2010 WL 2928069, at *2 (N.D. Ill. July 21, 2010) (noting that Illinois courts distinguish between active and passive purchasers in determining whether the exercise of personal jurisdiction over non-resident purchasers comports with due process). Consequently, by making the allegations or admissions that Champion highlights, Midwest did not plead itself out of court on its lack of personal jurisdiction affirmative defense. Therefore, Champion's motion to strike Midwest's first affirmative defense is denied.[1]

Champion also moves to strike Midwest's third affirmative defense, statute of limitations, contending that the defense is pleaded in conclusory fashion and therefore fails to meet the pleading requirements of Federal Rule of Civil Procedure 8. In response, Midwest maintains that it has adequately pleaded the affirmative defense. The court agrees with Midwest.[2]

Midwest must give a short, plain statement of an affirmative defense that gives notice to Champion. See Fed. R. Civ. P. 8(a), 8(c); Heller Fin., 883 F.2d at 1294. In addition, Midwest should allege some minimal facts to explain how its statute of limitations defense applies in this case. Cent. Laborers' Pension Welfare & Annuity Funds v. Parkland Envtl. Grp., No. 11 CV 3184, 2011 WL 4381429, at *1 (C.D. Ill. Sept. 20, 2011). In this court's judgment, Midwest has done so by specifically identifying the 4-year statute of limitations for the sale of goods which it maintains is applicable to this case, 810 ILCS 5/2-725, and by stating that Champion's claims for amounts due for the sale of goods to Midwest that arose more than four years prior to the filing of the complaint on October 14, 2010, are time barred. Thus, Champion's motion to strike Midwest's third affirmative

| STATEMENT |
|---|

defense is denied.

Next, Champion moves to strike Midwest's answer to paragraph 6 of the amended complaint contending that it is an attempt to allege that Champion committed fraud against Midwest and it is not stated with the particularity required under Rule 9. In response, Midwest maintains that its answer to paragraph 6 of the amended complaint is simply a denial that all the product delivered to Midwest was ordered by Midwest and not an allegation of fraud. Midwest's answer to paragraph 6 of the amended complaint will not be stricken because the court agrees that it is not an allegation of fraud. Even if it were, however, Champion has not cited authority establishing that Rule 9's specificity requirements apply to a defendant's answers to allegations in a complaint.

Finally, Champion moves to strike Midwest's counterclaim and paragraphs 6, 7, and 8 of Midwest's second affirmative defense contending that Midwest has included therein allegations against non-parties, Champion Strapping and Andrew Sandberg, which add unnecessary clutter and confusion and will delay these proceedings and expand the scope of this lawsuit beyond the issues related to the alleged breach of contract. In response, Midwest maintains that its counterclaim for a setoff is brought against Champion and is properly stated.

In its counterclaim, Midwest clearly seeks a setoff for sums that Champion received and not amounts that Champion Strapping or Sandberg received. Specifically, Midwest is claiming a setoff for "amounts received directly or indirectly by Plaintiff from manufacturing and sales of strapping products and steel cores manufactured by [Midwest] and sold by [Champion] or Champion Strapping." Obviously, Midwest will have the burden of proving that such amounts were funneled to Champion, but the court cannot say that the counterclaim is actually being brought against Champion Strapping or Sandberg.

Champion also argues that Midwest is attempting to confuse the issues in this case with the issues being litigated in a lawsuit between Midwest and Champion Strapping that is pending in the state of Ohio. However, Champion is not contending that Midwest's counterclaim in this case is also being advanced by Midwest in the Ohio litigation such that this court should consider dismissal of the counterclaim under the principles of the first-to-file rule. See Askin v. Quaker Oats Co., No. 11 C 111, 2011 WL 5008524, at *4 (N.D. Ill. Oct. 20, 2011) ("[T]he first-to-file rule exists to prevent duplicative litigation and to minimize waste."). Short of that contention, the court is not convinced that striking the counterclaim or paragraphs 6, 7, and 8 of Midwest's second affirmative defense is warranted to remove unnecessary clutter from this case or to avoid delay.

In the alternative, Champion argues that Midwest's counterclaim should be dismissed for failure to state a claim upon which relief may be granted because the counterclaim is brought against non-parties. As noted above, the counterclaim is asserted only against Champion and is therefore not subject to dismissal for the reason Champion argues.

### III. CONCLUSION

For the foregoing reasons, Champion's combined motion to strike defensive matters, affirmative defenses, and counterclaim or, alternatively, to dismiss the counterclaim is denied.

1. In its reply brief, Champion requests leave to amend its complaint in the event this court believes that it has failed to sufficiently plead allegations establishing this court's personal jurisdiction over Midwest. This request is denied. Plaintiffs are not required to plead a basis for the court's personal jurisdiction over a defendant. 4 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1067.6, at 563 (3d ed. 2002) (collecting cases and noting that "strictly speaking, under Federal Rule 8(a) plaintiffs are not required to plead the basis for personal jurisdiction over defendants").

2. The majority of courts in this circuit who have addressed the issue have concluded that the pleading standards of Twombly/Iqbal apply to affirmative defenses. See, e.g., Cassetica Software,

Inc. v. Computer Sciences Corp., No. 11 C 2187, 2011 WL 4431031, at *5 (N.D. Ill. Sept. 22, 2011); Massenberg v. A & R Sec. Servs., Inc., No. 10 C 7187, 2011 WL 2909364, at *1 (N.D. Ill. July 18, 2011); contra Leon v. Jacobson Transp. Co., Inc., 2010 WL 4810600, at *1 (N.D. Ill. 2010) (finding Twombly and Iqbal inapplicable to affirmative defenses). In any event, Midwest's statute of limitations defense is adequately pleaded even if the pleading standards of Twombly/Iqbal apply.